UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHANIE PETERSON,

        Plaintiff,

v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, a Connecticut
Corporation,

        Defendant.
_____/

CASE NO. 2:11-cv-10932

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING DEFENDANT'S CROSS MOTION FOR ENTRY OF JUDGMENT**

Before the Court is Plaintiff Stephanie Peterson's Motion for Summary Judgment on the Administrative Record (Doc. No. 14) and Defendant Hartford Life and Accident Insurance Company's Cross Motion for Entry of Judgment (Doc. No. 15). Plaintiff, an Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132 plan participant, brought this action challenging Defendant plan administrator's denial of long term disability ("LTD") benefits. In her motion, Plaintiff asks the Court to reverse Defendant's decision to deny benefits for a variety of reasons. Defendant seeks an affirmance of its decision and an award of attorneys' fees and costs as permitted under ERISA. The Court has reviewed the pleadings and the administrative record in its entirety, and finds oral argument would not aid in the resolution of this motion. See E.D. Mich. LR 7.1(f)(2). For the reasons that follow, Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED**.

**I.      INTRODUCTION**

Defendant Hartford Life and Accident Insurance Company issued to Plaintiff's former employer, GAF Materials Corporation, a Group LTD Insurance Policy ("the Policy") as part of GAF's welfare benefits plan. Peterson worked as a Territory Manager for GAF and was insured under their ERISA-governed Policy. As GAF's Territory Manager, Plaintiff was required to work long hours to promote business products. (H00309)[1]. She was responsible for all activities pertaining to her business in her territory. (Id.). However, after her treating physician diagnosed her with chronic fatigue syndrome ("CFS"), Peterson stopped working and applied for LTD benefits.

**A. The Policy**

Under the Policy, a "Disability" is defined in a way that distinguishes the first twenty-four months from anything thereafter. (H01036). For the first twenty-four month period, "Disability" requires a showing that the insured is prevented from "performing one of more of the Essential Duties of Your Occupation." (Id.). The Policy defines "Your Occupation" as, "your occupation as it is recognized in the general workplace. Your Occupation does not mean the specific job you are performing for a specific employer or at a specific location." (H01038). After the twenty-four month period, the insured must show that she is "prevented from performing one or more of the Essential Duties of Any Occupation." (H01036). The Policy defines Any Occupation as, "an occupation for which you are qualified by education, training or experience . . . ." (H01035). Furthermore, the Policy states that an "Essential Duty" "means a duty that:

---

[1] The administrative record was filed with the Court under seal. Citations to the administrative record will be identical as they appear in the administrative record: "H," followed by the corresponding bates numbered page. For example, page 309 of the administrative record will be cited as H00309.

(1) is substantial, not incidental; (2) is fundamental or inherent to the occupation; and (3) cannot be reasonably omitted or changed." (H01036).

### B. The Benefit's Process

Plaintiff applied for LTD benefits based on her CFS, but instead was granted short-term disability ("STD") benefits, effective May 16, 2005. (H00074, H00081). Her STD benefits were paid through November 13, 2005. Subsequently, Plaintiff established that she was unable to perform her "own occupation," and Hartford approved her claim of LTD benefits as of November 14, 2005. (H00075-H00078). After approving her claim, Hartford further evaluated the claim by gathering information from Plaintiff's doctors, former employers, and Plaintiff herself. (H00062-H00071). Upon completion of their review, Hartford determined that Plaintiff only met the Policy definition of Disability for the initial twenty-four month period because she had "Somatization Disorder," a mental condition covered by the Policy, that affected the essential duties of her "own occupation." (H00055).

Plaintiff appealed Hartford's determination and argued that she was disabled from performing "Any Occupation" based on her physical disability of CFS. Thus, she asserted that she was entitled to LTD benefits even after the twenty-four month period. On January 21, 2010, Hartford denied Peterson's LTD benefits for disability from "Any Occupation." (H00014). Hartford based its decision on the policy language and all the papers contained in Plaintiff's file. (H00015-16). Hartford noted that Dr. Laura Kovalcik provided an assessment of CFS, joint pain, hemoptysis, chronic cough, irritable bowel syndrome, fatigue, poor memory, food sensitivity, and a number of functional restrictions. (H00016). However, Hartford concluded that separate video surveillance

footage showed Plaintiff engaging in activities that were inconsistent with limitations reported by Dr. Kovalcik. (H00017). Furthermore, during Plaintiff's interview, Hartford concluded that there appeared to be inconsistencies with Dr. Kovalcik's medical conclusions. (H00017).

Plaintiff appealed Hartford's decision to deny benefits. In support of her appeal, Peterson submitted a report from Dr. Martin Lerner, a CFS specialist, and a radiology report. On August 26, 2010, Defendant informed Plaintiff that the appeal review was complete and that it had determined that Peterson was not disabled from performing "Any Occupation," as defined in the Policy. (H00002). Accordingly, no change would be made to its denial of LTD benefits. (Id.).

### C. The Administrative Record

The Court has reviewed Plaintiff's medical history as contained in the administrative record and outlines it below. Plaintiff's primary doctor from 2003 to 2009 was Dr. Kovalcik. Dr. Kovalcik has consistently opined that Plaintiff suffers from CFS and other impairments that render her unable to perform any type of work. (H00248-49). On January 12, 2007, Hartford's reviewer, Dr. Dribble, conducted a Medical Record Review Report ("MRRR"), in which he reviewed the records of Plaintiff and concluded that she was not impaired from full time work. Plaintiff underwent an independent medical examination in June 2007 with Dr. Podell, a neuropsychologist hired by Hartford. (H00588). Dr. Podell concluded that Plaintiff was not impaired from working from a cognitive or psychiatric standpoint. (H00597). Thus, on July 31, 2008, Hartford conducted an Employability Analysis Report ("EAR") based on a review of Plaintiff's medical records, and reasoned that Plaintiff could perform sedentary to light,

physical work activities. (H00094). The EAR relied on Dr. Jerome Siegel's MRRR of July 21, 2008, in which he reviewed Plaintiff's medical records and concluded that she was able to perform sedentary work. (Id.).

Shortly thereafter, on November 10, 2008, Plaintiff received a fully favorable Social Security decision. (H00128). In that decision, the administrative law judge ("ALJ") held that Plaintiff had been disabled since May 15, 2005. (H00133). The ALJ determined that Plaintiff suffered from CFS, C viral infections, bronchiectasis, and anemia. (H00135). The ALJ concluded that "[Plaintiff] lacks the residual functional capacity to perform even unskilled, sedentary work on a sustained basis." (Id.).

As part of Plaintiff's claim, Hartford set up surveillance of Plaintiff and conducted an interview with her at her home. During the interview that took place on October 22, 2009, Plaintiff sat and talked for over two hours with the Hartford interviewer. (H00250-55). The surveillance videos show Plaintiff on different days in July and August 2009. (H00266-274). One day, Plaintiff is seen getting into her car and driving to a hardware store. (H01052). On another occasion, she is seen using a shopping cart and carrying a case of water from that cart into her vehicle. (Id.). Again, on a different day, Plaintiff is seen watering her lawn and moving a sprinkler from one area of the grass to another. (Id.).

In November 2009, Hartford again sent Plaintiff's file for an independent review by Dr. Knapp. (H00018). As part of that review, Dr. Knapp contacted Drs. Kovalcik and Greenberger to discuss Plaintiff's disability claim. (H00018). Dr. Kovalcik informed Dr. Knapp that Plaintiff was unable to function in any type of employment due to chronic fatigue and impaired cognition. (H00018). Dr. Greenberger informed Dr. Knapp that

5

Plaintiff had exacerbations of pulmonary problems with coughing that might interfere with work, but that there were no restrictions or limitations supporting disability based on the cough and bronchiectasis. (H00018; H000140). Thereafter, on November 23, 2009, Dr. Knapp authored an MRRR and concluded that Plaintiff did not have any physical or cognitive restrictions or limitations. (H00018). Dr. Knapp's conclusion was based on the review of the medical records, surveillance videos, and the interview conducted by a Hartford representative with the Plaintiff. (H00117-122). He stated that "[Plaintiff] has no physical or cognitive impairment from a Rheumatology perspective." (H00122).

Hartford conducted another EAR in December 2009 and concluded that Plaintiff was not disabled from performing "Any Occupation." However, on three separate occasions during March through April 2010, Dr. Lerner treated Plaintiff and opined that she had, among other things, CFS, and that she could not perform work of any kind. (H00087). On August 17, 2010, Dr. John Brusch evaluated Plaintiff's medical records and authored a peer review report, wherein he stated that Plaintiff was not disabled from performing "Any Occupation." (H00092). Rather, Dr. Brusch reasoned that a CFS diagnosis seemed to be based solely on Plaintiff's complaint and that no doctor had ruled out other causes of fatigue syndrome. (Id.). Finally, the administrative record contains an undated report authored by Dr. Robert Levine that states Peterson most likely suffers from a chronic viral infection. (H00512). In that report, Dr. Levine references 2005-2008 findings in Plaintiff's medical records. (Id.).

6

**II.    STANDARD OF REVIEW**

As a preliminary matter, the Court notes that a summary judgment standard does not apply to Plaintiff's Motion for Summary Judgment.  The Sixth Circuit has recognized that summary judgment procedures may no longer be used in the review of a denial of benefits actions under ERISA.  Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609 (6th Cir. 1998).  Rather, the Court will decide this matter by rendering findings of fact and conclusions of law based solely upon the administrative record.  See Eriksen v. Metropolitan Life Ins. Co., 39 F.Supp.2d 864 (E.D. Mich. 1999).

A district court reviews an ERISA plan administrator's denial of benefits de novo, unless the plan gives the administrator discretionary authority to determine eligibility for benefits.  Cox v. Standard Ins. Co., 585 F.3d 295, 299 (6th Cir. 2009).  If the plan gives the administrator discretionary authority, the Court applies the highly deferential "arbitrary and capricious" standard of review.  Id. at 299.  "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action.  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."  Schwalm v. Guardian Life Ins. Co. of Am., 626 F.3d 299, 308 (6th Cir.2010) (quoting Shields v. Reader's Digest Ass'n, Inc., 331 F.3d 536, 541 (6th Cir.2003)).  However, the arbitrary and capricious standard "does not require us merely to rubber stamp the administrator's decision."  Jones v. Metro. Life Ins. Co., 385 F.3d 654, 661 (6th Cir. 2004).  Rather, we must review "the quality and quantity of the medical evidence and the opinions on both sides of the issues."  McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003).  If the administrator's decision is supported by substantial evidence, it must be

upheld.  Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

Here, the Policy expressly grants Hartford "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy."  (H01048).  Therefore, the Court reviews this case under the highly deferential "arbitrary and capricious" standard.

### III.   ANALYSIS

The ultimate question in any disability case on "arbitrary and capricious" review "is whether the plan can offer a reasoned explanation, based on the evidence, for its judgment that a claimant was not 'disabled' within the plan's terms."  Elliott v. Metro. Life Ins. Co., 473 F.3d 613, 618 (6th Cir.2006).  Here, because Plaintiff already had received twenty-four months of LTD benefits under the "Your Occupation" provision, she carried the burden of showing "disability" under the "Any Occupation" definition of "Disability." Donatiello v. Hartford Life and Acc. Ins. Co., 344 F.Supp.2d 575, 580 (E.D.Mich.2004) (The plaintiff bears the burden of proving disability under the ERISA Plan).  Defendant asserts that Plaintiff failed to carry that burden because there were numerous contradictory medical opinions in the administrative record.  (H00002).  Plaintiff asks the Court to find Defendant's decision denying benefits arbitrary and capricious.

The Court begins by organizing Plaintiff's varied objections into three general categories.  First, she contends that Hartford gave presumptive weight to the opinions of nonexamining, consulting physicians and improperly analyzed the medical evidence. Second, she argues that Defendant encouraged her to pursue Social Security disability benefits for total disability, yet did not consider the Social Security Administration's

("SSA") decision finding Plaintiff totally disabled.  Third, Plaintiff asserts that a structural conflict of interest unfairly influenced Defendant's decision.

### A. Presumptive Weight to Nonexamining Doctors

Plaintiff argues that Hartford gave presumptive weight to the opinions of its own, nonexamining physicians, over the opinions of Plaintiff's doctors.  Indeed, she argues that Defendant's doctors made credibility findings without appropriately giving deference to the diagnoses of Peterson's treating physicians.  The Supreme Court has held that the "treating physician rule" does not apply in the context of ERISA claims, and those regulations that require a full and fair assessment of claims "do not command plan administrators to credit the opinions of treating physicians over other evidence relevant to the claimant's medical condition."  Black and Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003).  Indeed, there is nothing "inherently objectionable about a file review by a qualified physician in the context of a benefits determination."  Calvert v. Firstar Finance, Inc., 409 F.3d 286, 296 (6th Cir. 2005).  Rather, whether a doctor has physically examined a claimant is one factor a court may consider in determining whether a decision to deny benefits was arbitrary and capricious.  See id. at 295; Kalish v. Liberty Mutual/Liberty Life Assurance Co. of Boston, 419 F.3d 501, 508 (6th Cir. 2005).

In considering how much weight to afford a file reviewer's opinion, the Court must determine whether that opinion includes credibility determinations.  In Calvert, the court held that the ERISA plan administrator relied almost exclusively on its own physician's file review, while ignoring surgical reports, x-rays, CT scans, and the SSA determination that documented the claimant's disability.  409 F.3d at 296.  The court stated that

9

"[w]here . . . the conclusions from that [file] review include critical credibility determinations regarding a claimant's medical history and symptomology, reliance on such a review may be inadequate." Id. at 297, n.6. Furthermore, in Helfman v. GE Group Life Assurance Co., 573 F.3d 383, 395 (6th Cir. 2006), the court held that where a plan administrator's own doctor could have performed a physical examination and chose not to, and subsequently made a credibility determination, that is a factor for determining whether the administrator's decision was arbitrary.

Here, the file reviews contain multiple credibility determinations. Dr. Brusch, for example, stated that Plaintiff's diagnosis appears to be based solely on her complaint rather than functional limitations. (H00092). The file reviews by doctors Knapp and Siegel extensively list Plaintiff's medical history, but merely conclude that she is not disabled from performing "Any Occupation." Indeed, even though he recites Peterson's extensive medical history, Dr. Knapp merely concludes that, "[t]he records do not document clinically significant clinical medical findings that support any restrictions and limitations from a physical or cognitive perspective." (H00122). Similarly, Dr. Siegel concluded that, "Ms. Peterson should be physically capable of performing at least sedentary to light physical demand work activities." (H00094). He made credibility determinations that the Plaintiff is "independent with activities of daily living and instrumental activities of daily living." (Id.). Finally, Defendant relies on surveillance video and an interview conducted by one of its agents. Looking at the surveillance video, Defendant concludes that Plaintiff is not disabled because she is able to go to the store and lift a case of water.

The Court finds that Defendant's reliance on medical conclusions from file reviews is a factor that weighs in favor of Plaintiff in deciding whether Defendant's decision to deny benefits was arbitrary and capricious. With the ability under the Policy to conduct its own examinations, Defendant instead relied on its own file reviews. Furthermore, the file reviews contained credibility determinations. Given the fact that the file reviewers did not actually examine Plaintiff, and their conclusions contained numerous credibility determinations, the Court views such statements with skepticism and finds that they are entitled to less weight.

### B. Social Security Disability

Peterson contends that Hartford's decision to deny benefits was arbitrary and capricious because it failed to consider the award of total disability benefits she secured from the SSA. A determination that a person meets the SSA's standards for disability does not automatically entitle her to benefits under an ERISA policy that defines "disability" differently. Whitaker v. Hartford, 404 F.3d 947, 949 (6th Cir. 2005). However, where the plan administrator fails to consider a claimant's SSA award, it is a factor in determining whether the decision to deny benefits was arbitrary and capricious. Glenn v. MetLife, 461 F.3d 660, 669 (6th Cir. 2006). It is a factor that weighs in finding a decision to be arbitrary and capricious "[i]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of disability; and then (3) fails to explain why it is taking a position different from the SSA on the question of disability." DeLisle v. Sun Life Assurance Co. of Canada, 558 F.3d 440, 446 (6th Cir. 2009) (citing Bennett v. Kemper Nat'l Servs., 514 F.3d 547, 554 (6th Cir. 2008)).

In this case, the SSA's finding is part of the administrative record. (H00128). The ALJ found that Peterson "lacks the functional capacity to perform even unskilled, sedentary work on a sustained basis." (Id.). The ALJ's conclusion was based on a determination that Plaintiff suffers from CFS, C viral infection, bronchiectasis, and anemia. (H00135).

In addition, the record reflects that Hartford notified Peterson that her LTD payments were subject to discount for amounts received from other sources, including Social Security. In fact, Hartford encouraged Plaintiff to apply and receive Social Security benefits. Hartford benefited from Plaintiff's receipt of Social Security benefits, when it calculated an overpayment to Plaintiff in the amount of $58,565.67 after Social Security benefits were granted. (H00035). It is clear that Hartford benefited from the SSA decision and should have given appropriate weight to that determination. See Glenn v. MetLife, 461 F.3d 660, 669 (6th Cir. 2006) ("Having benefitted financially from the government's determination that [the plaintiff] was totally disabled, [the defendant] obviously should have given appropriate weight to that determination."). However, the administrative record is completely devoid of any reason why Harford took a position inconsistent with the SSA. Defendant merely states that it carefully considered all relevant evidence and that the definition for "Disability" in the Policy differs from the SSA's definition. (H00005). However, Defendant failed to explain the ALJ's decision or state why its finding was different. Thus, the Court finds that Defendant's failure to explain the ALJ's determination favors a finding that the decision was arbitrary and capricious.

### C. Conflict of Interest

The Court considers conflict of interest as a factor to be weighed in determining whether the decision to deny benefits was arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). When the plan administrator both evaluates claims for benefits and pays the claims it approves, the administrator is operating under a structural conflict of interest that must be weighed as a factor in the Court's determination of whether the denial of benefits was arbitrary or capricious. See Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008)). The Supreme Court has explained that the existence of such a conflict does not heighten the standard of review; it is "but one factor among many that a reviewing judge must take into account." Id. at 116; see also Calvert, 409 F.3d at 293 (noting that the Sixth Circuit has consistently viewed a conflict of interest as a factor to consider in applying the "arbitrary and capricious" standard). The Court's inquiry should "look to see if there is evidence that the conflict in any way influenced the plan administrators' decision." See Hunter v. Life Ins. of N. Am., No 10-1244, 2011 WL 2566357, at *4 (6th Cir. June 29, 2011).

There is no evidence in the administrative record to suggest that an inherent conflict of interest influenced Hartford's decision. However, Defendant's decision-making process is highly indicative of one aimed at denial of benefits rather than affording proper regard for the fiduciary duties owed to a claimant. Indeed, Defendant did not take the opportunity to have its doctors examine Plaintiff, even though those doctors rejected outright the medical determinations of Plaintiff's treating physicians. Furthermore, Hartford encouraged Peterson to apply for Social Security benefits, but did not even find it necessary to discuss the ALJ's determination that Plaintiff was totally

13

disabled. It is evident that Hartford's dual role as insurer and administrator of the LTD policy interfered with an objective review of the record. See Id. at 8.

## IV. CONCLUSION

Reviewing the totality of the evidence and Defendant's decision-making process, the Court finds that Defendant did not engage in a deliberate and principled reasoning process in denying benefits. Defendant's decision to deny benefits, therefore, was arbitrary and capricious.

When a district court determines that a plan administrator's decision to deny benefits was arbitrary and capricious, the court may either award benefits or remand to the plan administrator. Elliot v. Metro. Life Ins. Co., 473 F.3d 613, 621-22 (6th Cir. 2006). Here, the Court remands this matter to Hartford for a full and fair inquiry as to whether Plaintiff should be awarded disability benefits. The Court cannot say with certainty that Peterson is entitled to disability benefits. Indeed, the Court lacks the medical expertise to make that judgment. Id. at 622-23. However, the decision by Hartford must be made fairly and with deliberate and principled reasoning.

Accordingly, Plaintiff's motion is **GRANTED** and Defendant's motion is **DENIED**.

**IT IS SO ORDERED.**

                               s/Marianne O. Battani
                               MARIANNE O. BATTANI
                               UNITED STATES DISTRICT JUDGE

DATE: November 30, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Order was served upon all counsel of record via the Court's ECF System.

s/Bernadette M. Thebolt
Case Manager